AUTOMATIC TOTALISATORS, INC. *v.* UNITED STATES. (No. 4339)[1]

United States Court of Customs and Patent Appeals, February 24, 1942

[1] C. A. D. 195.

S. *Pierre Robineau* for appellant.

*Paul P. Rao,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *William J. Vitale,* special attorney, of counsel), for the United States.

[Oral argument December 3, 1941, by Mr. Robineau and Mr. Lawrence.]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal, in a reappraisement proceeding, under the Tariff Act of 1930, from a judgment of the United States Customs Court, Second Division, reversing the judgment of the single judge adjudging that the entered value of the involved merchandise constituted the correct dutiable "export value," as that value is defined in section 402 (d) of said tariff act.

Upon importation, the merchandise was appraised as being dutiable on the basis of cost of production, the appraiser adding to the entered value the sum of 8 per centum thereof for minimum profit as provided in section 402 (f) (4) of the Tariff Act of 1930.

The importer, appellant here, appealed to the United States Customs Court for a reappraisement, pursuant to section 501 of the said tariff act. The trial took place in Miami, Fla., and involved the proper dutiable value of a machine known as a "totalisator." The merchandise was imported by appellant and placed in use at the Hialeah Park race track in Florida. It was exported by Automatic Totalisators, Ltd., of Sydney, Australia.

It appears that the importer conceded at the trial that "cost of production" was the proper basis for appraisal. Its contention was that the cost of production was shown by the invoice and the entered value, but that the profit in the manufacture of the merchandise was included in said cost and consequently the appraiser was alleged to have erred in adding the sum of 8 per centum as aforesaid. The addition for profit made by the appraiser was the only matter in dispute.

The trial court in its decision refused to consider the case as involving application of the "cost of production" section, despite the said concession.

Upon application by the Government for review of the decision of the trial court, the appellate division, one judge dissenting, reversed the judgment of the trial court and decreed the cost of production value found by the appraiser to be the correct dutiable value.

It appears that a totalisator is a complicated machine used at race tracks where the betting is conducted under the pari-mutuel system. By means of the machine, when a bet is made, a ticket identifying the bet is printed, the number of bets and the amount thereof is immedi-

ately automatically recorded and the changing odds on the horses or dogs is automatically exhibited to view, so that during the progress of the betting it is a matter of simple calculation to ascertain from time to time the amount of the pools on each of the contestants and approximately the amount to be received by the holders of the winning tickets. The number of pools depends upon the number of contestants and the number of ways in which the bets are paid. It appears that there may be only two pools on each contestant made in countries other than the United States, wherein three pools may be made. In commonly known race track parlance "straight," "place," and "show" tickets participate in the respective pools, in this country, while elsewhere it is only the "straight" and "place" tickets that are paid.

The machine may be in several sizes, depending upon the number of ticket-issuing devices. One machine may differ from another because of the monetary system of the country where the races are held, the particular units of value to which the bets are confined and the number of winners.

The exporter had, prior to the present importation, supplied totalisators in various sizes to many race tracks in Europe, Australia and in the countries of the South Seas. The involved machine was different from any of the totalisators theretofore made, in that it was specifically designed and adapted for use with the United States monetary system, the particular units of value of the bets to be made and the "straight," "place," and "show" pools peculiar to the pari-mutuel betting system in this country.

It appears that there was no definite selling price offered for any machine or for any number of units thereof. Each totalisator was sold for a price depending upon many different factors in addition to those already mentioned, such as the ticket values, the maximum number of races per day, the time allowed between races for betting, the number of racing days per annum, the type of indicator required, the number of enclosures, etc. It may thus be seen that each totalisator would probably differ in price from any other totalisator, and as the price of the machine depended upon the adaptation to the differing needs of different race tracks, it is not understood how there could be a freely offered price, in the ordinary course of trade to purchasers.

The imported machine was not adaptable for use anywhere except in the United States and was the first and last of its kind to be made.

The sale herein was made in accordance with an agreement between the exporter and the importer whereby the importer agreed to pay the exporter a price equal to the cost of producing the machine. In addition to that price which included no profit to the exporter the importer agreed to pay as a royalty for the use of the machine a graduated percentage of all monies wagered.

It appears that when Automatic Totalisators, Ltd., received the special specifications and required details for the construction of the machine adapted for use at the Hialeah Park race track, it farmed out the manufacture of the various parts and mechanisms of the involved totalisator to 8 or 10 different subcontractors. After the work of the subcontractors was completed, adjustments and fittings of the various parts were made by the Australian company and the machine, packed in four shipments, was sent to this country.

The record discloses that each of the manufacturing subcontractors added to the cost of manufacture a profit of not less than 8 per centum. The importer contended that because the said profit had been added to the cost of manufacturing the machine by the subcontractors, the addition for profit made by the appraiser was erroneous.

The appellate division agreed with the holding of the trial court that the record shows a very substantial cost incurred by Automatic Totalisators, Ltd., "in assembling and putting together and adjusting the various parts" of the involved merchandise after they had been received from the subcontractors. Both of the tribunals below held that the exporter manufactured the machine and since there is substantial evidence to sustain such holding, we must agree with the decision of the appellate tribunal that the exporter is to be considered as the manufacturer.

We find nothing in the record to sustain a contention that the proper basis for dutiable value is export value. Appellant did not make such contention until after the decision and judgment of the trial court had issued. Since the decision and judgment of the trial court was based upon a theory entirely different from that upon which the suit was tried, no other course was open to appellant except to attempt to find in the record some evidence upon which to sustain that theory.

Counsel for appellant was in a difficult position after he, per force, was obliged to shift his theory. He had made his record upon the basis that cost of production was the proper measure of dutiable value and had offered no evidence as to export value. The record is barren of any evidence tending to establish market value or the price at which such or similar merchandise was freely offered at any time to anyone.

Appellant, in an attempt to sustain the theory upon which the judgment of the trial court was based, contends here as it did before the appellate court that there is evidence of export value in the record and bases its contention principally upon the contents of a catalog, issued by the exporter which is Illustrative Exhibit A, and which was offered in evidence by the Government. The exhibit was offered and received in evidence for the purpose of enlightening the court as to the general nature of totalisators but at the time the exhibit was offered, appellant consented to its admission with the qualification that the

exhibit "does not describe this particular mechanism, which was built to specifications."

The said exhibit contains an interesting story of the beginning, growth, and development of the pari-mutuel system of betting together with pictures of various parts of the machine and photographs of the buildings at various race tracks where totalisators are in use. Nowhere in the exhibit is there any indication as to price or value. Prospective purchasers of totalisators are informed in the exhibit as follows:

For Particulars regarding the Information required by AUTOMATIC TOTALISATORS LIMITED to enable the Company to quote for the Supply and Installation of PREMIER TOTALISATOR EQUIPMENT to meet the Requirements of any Racecourse, use one of the accompanying forms:—

(a) For Clubs already using Pari Mutuel, or some form of Totalisator Equipment.

(b) For Clubs using neither Pari Mutuel nor Totalisator Equipment.

If possible, a Plan of the Course, showing Buildings, Stands, Enclosures, etc., and copies of race books or cards, should be forwarded with the enquiry to:—

THE SECRETARY,
AUTOMATIC TOTALISATORS LTD.,
Kembla Building, Margaret Street,
Sydney, N. S. W., Australia

Certainly there is nothing in the exhibit to inform the purchaser as to price or value and the exhibit was properly held by the appellate division to be without weight in establishing an export value.

Appellant seems to challenge the jurisdiction of the appellate division to pass on questions of fact as well as of law. The answer to such contention is stated in the case of *United States* v. *F. W. Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, 191, T. D. 47126. In that case the court said as follows:

The statute provides that the division of three judges "shall affirm, reverse, or modify the decision of the single judge or remand the case to the single judge for further proceedings." The authority thus given is very broad. *Certainly the appellate division passes upon questions of both law and fact. We think that it may appraise, that is, find the dutiable value, and that it is its duty so to do in all cases where the appraiser had the power to appraise the merchandise at the time the appraisement was made.* If it regards the value found by the single judge as both legally and factually correct, it should affirm such value. If not regarded as correct, it should find what is the value, or, if the record be insufficient, in its opinion, to enable such finding, the case should be remanded to the single judge with directions to dismiss the appeal to reappraisement or for a new trial, as the division may determine. * * * [Italics added.]

An appeal to this court from an appellate division of the United States Customs Court in a reappraisement proceeding can be on matters of law only.

The appellate division could not have made findings of fact other than it did based on this record. Those findings are as follows:

1. That the imported merchandise consists of one totalisator machine.

2. That the same was entered at the invoice price which did not include the addition of any amount for profit to the manufacturer.

3. That the merchandise was appraised as entered plus the addition of 8 per centum for profit under section 402 (f) of the Tariff Act of 1930 on the basis of cost of production.

and therefore its conclusion of law "That the cost of production is the proper basis of appraisement, and that the appraiser properly and correctly added the 8 per centum to the entered value to cover the item of 8 per centum for profit as provided in section 402 (f) of the Tariff Act of 1930." is without error.

The judgment of the United States Customs Court is *affirmed*.